Let's see, do we have, is it Mr. Fada v. Villavideo? I'm Mr. Fada. You're Mr. Fada. So we have Mr. Gates then? Is that correct? That's correct. All right. And you may proceed. Thank you, Your Honor. May it please the Court? My name is Michael Fada. I represent Mr. and Mrs. Nichols in this case. Mr. and Mrs. Nichols are here before the Court this morning to urge reversal of the bankruptcy court's decision, finding that their 2001 application of their tax overpayment to their 2002 estimated tax debt was property of the bankruptcy estate. Do I understand correctly this took place 16 days before they filed in bankruptcy and they prepaid the next year's taxes? It was, it's correct, Your Honor. It was 16 days before the bankruptcy was filed, but it was an application of an overpayment that they were due, it was a refund that was due, it was applied in their tax return. To prepay the next year's tax. That's correct, Your Honor. Okay. I was wondering if you had this situation and instead of taking the application for the next year's taxes, which is a fairly common thing to do, what your clients did, if instead they got the money back from the IRS and then within the same timeframe or approximate timeframe before the bankruptcy were filed, if they got the money back and then they used that refund in effect, the same amount, to make a quarterly, you know, advanced payment, would you think that is the same situation or different? I think it's the same, Your Honor. I think it's an estimated tax payment. In that scenario, it would be the same thing. And your view that because they couldn't then get it back once paid, that it not ought not be part of the estate? No, Your Honor, that's not the appellant's view. The appellant's view is that the bankruptcy court took that approach, but the appellant's view is that the tax provisions prescribe that the character of the overpayment changes or the character of the overpayment changes to a tax payment and that there is no credit remaining at that point or no claim for refund in that taxable year. So you view it as kind of like a zero balance in effect? Correct. And that the debtor has no interest at that point. Okay. And the tax code also, 26 U.S.C. 6513d, supports that. It says once that the overpayment under 6402 is applied, no claim for credit refund or in the taxable year can be made. The bankruptcy court, under 542 and 541 of the bankruptcy code, made an analysis that the debtors retained a credit when they applied this money forward, and that credit was estate property and should be then turned over to the trustee. That conclusion completely takes all the meaning out of the tax code, because the tax code specifically provides that you can do it and that it loses character and that there is no right left for the debtor. The IRS controls the money at that point, can apply that money to any outstanding debt the debtor has or the taxpayer has. It doesn't necessarily the taxpayer can't even earmark that money for the succeeding year's taxes. Although it's applied that way, the IRS can apply it any way it wants under the tax code. I see this as a very close case. I know both sides see it very easily, but I don't. I'm in the middle. And as I understand it, there hasn't been a circuit court in the United States that's ruled on this particular issue. I don't. I think there's a district court ruling, but not or two district court rulings in the circuit court that I'm aware of. So there isn't any circuit that's taken this particular issue on. So we're going to do it for the first time. Now, what I'd like to do, I understand that the filer's case is different from this case, but it is our circuit's case, and it has some reasoning in there that cuts to this case. It's a much broader case. Now, having had that case already in our circuit, on what basis would you distinguish filers? I understand it's different, but the reasoning is there, and it's the only thing that's even close that we've found in any circuit. So I'd like to get your view of how we distinguish filers' reasoning to get to the point you want us to get to. Your Honor, filer, as you know, was analyzed and was a case that was taken on a net operating loss scenario. The tax code, section 1398, 26 U.S.C. 1398G, specifically provides that the bankruptcy estate shall succeed to net operating losses. And so it earmarks those for the bankruptcy court so the trustee can either take a loss or realize a refund in any specific case where there may be a refund available by applying losses or by not taking losses, whichever the case may be. No such provision is in the tax code for estimated tax payments. And there's good reason for that. Assuming that a debtor filed his bankruptcy in November and he had a self-employed person and he had made his quarterly payments all year long, the trustee could go in and raid those payments and create another liability for the debtor at that point. And I think it's a slippery slope because then all of the ñ it throws the IRS into   And the IRS is going to have to pay the IRS money, provide it to the trustees, and invariably the trustee will turn around and end up giving a great portion of that right back to the IRS for tax obligations that the debtors have. So it doesn't ñ it's kind of a ñ Well, it depends how broadly you define property, doesn't it? Isn't that the essence of the problem? Well, I think property is a very broad definition, Your Honor, within the bankruptcy code. It pretty much encompasses any interest that the debtor has. And our position here is that the debtor has no interest on the date of filing, so under Bankruptcy Code 541, there wouldn't be any interest that goes into the bankruptcy estate if you give full effect to the tax provisions. You can find that there is an interest for the debtor if you don't give the tax provisions their full meaning, which is what we conclude the bankruptcy court did here. Let me ask you a statutory question. And you ñ I think you quoted this at the beginning from the tax code, that you can't get a claim or credit for the taxable year in which the overpayment arises. So if you check the little box on your tax return and then they keep your overpayment, but then it turns out that that year your tax liability didn't rise to the level of the overpayment, then you could get a refund afterwards. Could you not? That's correct, Your Honor. But the ñ but the court has already ñ there has already been a court that's decided that issue. It's a court ñ matter of fact, a case that was cited by the trustee. It's ñ the name of the case is Wright v. United States. It's N. Ray Cannon. In that case, the same thing happened. The debtors had $14,900 that they applied forward. The following year, they got ñ they didn't need the money for their tax obligation. They got the $14,900 back, and that was a state property. That was a state property because it was a pre-petition ñ it was accumulated pre-petition and applied to their taxes, but they got it back, so it was a state property. We've never contended that the $600 that Mr. and Mrs. Nichols got back was not a state property. As long as the liability ñ there's a liability matching the overpayment, then your position is that it's a zero balance, in effect, that it belongs to IRS and your clients can't even touch it. That's correct, Your Honor. Do you want to reserve your remaining time? I would like to. Thank you. You may proceed. Thank you. Thank you. Thank you. Thank you. Thank you. Let me just interrupt and ask you, Mr. Davis. If there were an existing tax liability on the books when they made their overpayment, would your position be the same? Yes, Your Honor. But their position is not far off that, in that they're saying it's by operation of law, once we designate this for overpayment, that it's out of our hands. It's then with the IRS. It's not with the debtor or the taxpayer. So isn't that similar? Is this a court matter? Go ahead. Yes, Your Honor. Yes, Your Honor. Yes, Your Honor. Yes, Your Honor. Yes, Your Honor. Yes, Your Honor. Yes, Your Honor. Let me ask you, from a practical point of view, if your position is sustained, what happens next? Who pays the money back to the Bank of Seastate? If the Bank of Seastate's debtors are eradicating our tax liability, that's sustained. But if Seastate's debtors can't have a position, who pays? If the IRS still had the money, what would happen? Well, the literal answer would be something for people to decide. I don't say it's an option, I think it's a possibility. I think it's... I think it's a possibility. Okay. All right, well, I don't think we actually get rebuttal, but you do have a little additional time. I don't think there's any further questions, so thank you. All right, thank you. Please, clerk. Your Honor, in Filer, he makes reference to Filer. The court, this very court, said in Filer that if the avoidance powers were not present to a trustee in that scenario, that the trustee would be stuck with the debtor's option to apply or not apply these net operating losses. That only because he had his avoidance power, that's what gave him the trump up on the debtors in that case. Here, the bankruptcy court or the trustee abandoned his avoidance powers, seeking to just declare it estate property under 542 and request a turnover. Our position was that he should have requested the turnover from the IRS, and, you know, this is a novel position. I've never heard the trustee concerned about the debtors before, but it is. I just don't know why they didn't go after the IRS in the first place. But this very court had said in Filer that if the trustee didn't have the avoidance powers, the trustee would be stuck with the debtor's act of applying those or not applying those net operating losses. Thank you. And, Judge Spencer, for your arguments this morning, the case of Nichols v. Ferzo is submitted.
judges: Wallace, Cudahy, McKeown